# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 17-cv-294

MYRIAM ELIANA CALDERON TORRICO

    Plaintiff,

v.

DAVID ROBLES ORTEGA, SR.,
individually and in his official capacity, and
RALPHIE'S PIZZA,

    Defendants.

## COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiff Myriam Eliana Calderon Torrico ("Eliana" or "Plaintiff") seeks redress for wage and hour and civil rights violations she suffered from 2004 to 2015, inflicted by her soon-to-be-former husband and former employer, David Robles Ortega, Sr. and her employer Ralphie's Pizza ("Ralphie's") (collectively "Defendants").

2. Eliana married Mr. Ortega in September of 2004 in Bolivia. Following the marriage, Mr. Ortega arranged for Eliana to be smuggled into the United States. Once Eliana arrived, Mr. Ortega assessed a smuggling debt against her and exploited her position as an undocumented immigrant. Mr. Ortega subjected Eliana to abuse, poor working conditions, and involuntary servitude at Ralphie's.

3. Eliana brings this action to recover damages for injuries inflicted by Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), 18 U.S.C. § 1581, *et seq.*; the Colorado Labor Code, Colo. Rev. Stat. §§ 8-2-104 and § 8-2-107; and common law claims under Colorado law for intentional infliction of emotional distress; fraud; and promissory estoppel.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (commerce), 29 U.S.C. § 216 (FLSA), 18 U.S.C. § 1595 (TVPRA), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under Colorado law.

5. Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Colorado. Defendant Ortega is a resident of Colorado, and Ralphie's Pizza is located in Colorado.

## PARTIES

6. Eliana is a Bolivian citizen who resides in Colorado.

7. At all times relevant to this action, Plaintiff was an employee of Defendants within the meaning of the 29 U.S.C. § 203(g) and Colo. Rev. Stat § 8-4-101(5).

8. Upon information and belief, Defendant Ortega is a Bolivian citizen and permanent resident of the United States. Defendant Ortega resides in Colorado.

9. At all times relevant to this action, Defendant Ortega was owner, operator, and registered agent of Ralphie's Pizza.

10. The primary residence or usual place of business address of Ralphie's Pizza is 5999 South University Blvd., Greenwood Village, CO 80121.

11. At all times pertinent to this action, Defendants employed Plaintiff within the meaning of 29 U.S.C. § 203(g) and Colo. Rev. Stat § 8-4-101(6).

## STATEMENT OF FACTS

### A. PLAINTIFF'S TRANSPORTATION TO THE UNITED STATES

12. In 2004, Eliana lived in Bolivia with her family. She worked as a receptionist for a telecommunications company—a job she held for twelve years. That year, Defendant Ortega traveled to Bolivia from the United States and began to court Eliana.

13. During his relationship with Eliana, Mr. Ortega traveled to Bolivia frequently. He gained Eliana's trust as well as the trust of her family, and he ultimately enticed Eliana to marry him and join him in the United States.

14. Mr. Ortega promised Eliana that she could bring her children to the United States. He promised to work so that Eliana would not have to work. And he told her family that he had purchased an apartment in which the two of them would live, so that Eliana would have a good life.

15. In reliance on Defendant Ortega's representations, Eliana married him in September 2004 in Bolivia. Mr. Ortega arranged for smugglers to transport Eliana into the United States to live with him in Colorado.

16. At all times and upon arranging Plaintiff's transportation, Mr. Ortega knew that Plaintiff was a Bolivian native with limited English speaking proficiency, that she had no support

network in Colorado, and that she anticipated finding support and partnership in her marriage with Mr. Ortega.

17. Plaintiff left Bolivia in November 2004; she arrived in Colorado in January 2005. During the course of her transport to the United States by the smugglers that Defendant Ortega had paid, Plaintiff was kidnapped and imprisoned by a group of criminals for approximately two weeks. She managed to escape and call Mr. Ortega from a pay phone in San Marcos, Mexico. Mr. Ortega contacted the smugglers he had paid to transport Eliana to the United States and flew to Mexico to help them recover her.

18. Mr. Ortega—through the smugglers he had hired—ultimately paid the group of criminals $500.00 to secure Eliana's release and return her to the smugglers to continue her transport to the United States. As a result, Plaintiff feared deportation, police, and immigration authorities for years. Mr. Ortega exploited Plaintiff's fears and threatened to contact the immigration authorities in order to exert control over her.

**B. RECRUITMENT OF INVOLUNTARY LABOR**

19. Despite Mr. Ortega's representations to Plaintiff that she would not have to work in Colorado, Mr. Ortega arranged a job for her at a restaurant called Famous Pizza. Mr. Ortega did not tell Eliana that he had secured this job for her until she was being transported through Mexico on her way to the United States.

20. Eliana arrived in the United States on Thursday, January 6, 2005. The next day, Mr. Ortega informed Eliana that she owed him a smuggling debt of $11,000.00.

21. Mr. Ortega forced Plaintiff to work at Famous Pizza to pay off her debt. He drove her to and from work each day. Each time she earned a paycheck he drove her to the bank and ensured that she deposited her wages into his bank account.

22. Plaintiff continued working at Famous Pizza until May of 2005, when Mr. Ortega went into business with Ralph Bockius, who then owned Ralphie's Pizza. Mr. Ortega and Mr. Bockius opened Ralphie's Pizza in July of 2005, and Eliana began working at Ralphie's at that time.

23. Upon hiring Plaintiff, Defendant Ortega knew that she had a limited understanding of the U.S. legal system and its labor laws. Mr. Ortega knew that if he failed to inform Eliana about these laws and systems, or misinformed her, she would not have enough knowledge of these laws and systems to be able to assert her rights.

24. Upon hiring Plaintiff, Mr. Ortega also knew that he intended to exert pressure on Eliana to refrain from taking action to assert her legal rights. Specifically, Mr. Ortega intended to provide Eliana misinformation or to withhold information from her about relevant laws and legal systems, so that Eliana would not have knowledge of them, in an effort to prevent Eliana from asserting her legal rights.

25. Accordingly, Mr. Ortega did not provide Eliana proper or adequate labor and wage information upon hiring her, or at any time thereafter, and Mr. Ortega intentionally set about to obtain forced and involuntary labor from Plaintiff.

C.  **SCOPE OF INVOLUNTARY SERVITUDE**

26. Eliana regularly worked seventy-six (76) or more hours per week for Defendants from July of 2005 through August of 2014.

27. Defendant Ortega ordered Eliana to clean and cook during these hours, generally from the morning until late in the evening. She was not permitted to rest while at work.

28. In September 2006, Defendant Ortega became the sole owner of Ralphie's Pizza. Defendant Ortega continued to force Plaintiff to work long hours at Ralphie's to pay her smuggling debt. He prevented her from taking breaks during the day and from accepting tips from customers.

29. From 2006 until around 2008, Defendants typically paid Plaintiff some wages. However, Defendants never paid Eliana for worked overtime, and Defendant Ortega continued to demand that Plaintiff return all wages to him to satisfy her smuggling debt.

30. Despite her long hours, Plaintiff was not paid the statutorily-required minimum wage or any overtime from at least July 2009 onward.

31. Throughout Eliana's employment at Ralphie's, she did not sign any documentation related to her employment. Defendants did not allow her to keep any payroll records. In fact, Defendants did not maintain records related to the wages, hours, and other conditions of employment in which Eliana worked. Mr. Ortega expressly told Eliana that he knew how to protect himself, and that he only provided Plaintiff checks to maintain a paper trail.

32. When Plaintiff became pregnant with her son Fabricio in 2007, she told Mr. Ortega that she needed a car. Mr. Ortega suggested that she purchase a car with the money she earned at work, and he promised to make every other payment on the car. In reliance upon that promise, Eliana purchased a Toyota Forerunner with Mr. Ortega. Mr. Ortega registered the car in his name. He required Eliana to pay for the car's insurance and other ancillary costs, and Mr. Ortega told her that he would subtract the payments from Eliana's earned wages.

33. During the months Plaintiff was responsible for the car payment, Defendant Ortega paid Plaintiff wages, which she then returned to him. During the months Defendant Ortega was responsible for the car payment, he withheld Plaintiff's wages.

34. Around September 2007, Plaintiff paid the balance of her smuggling debt. At that point, Defendants stopped paying plaintiff for her work at Ralphie's. Defendant Ortega told Eliana that she had become his wife, and that she therefore no longer had rights to wages for her work in the business owned by her husband.

35. Instead, Defendant Ortega provided Eliana limited disbursements of money for specific expenses related to their family home or their son, Fabricio. When Mr. Ortega provided Eliana money for expenses, he wrote her checks for the exact amount of the expense. He required Plaintiff to keep records to prove that she used the money for its designated purpose.

**D. INJURY AND EXPLOITATION DURING FORCED LABOR**

36. Eliana worked at Ralphie's each day from the morning until late in the evening.

37. Defendant Ortega generally prohibited Eliana from taking any breaks from work, including rest breaks and time off during weekends. He also did not allow her to take any vacations.

38. Eliana often suffered physical pain and exhaustion from working long hours at Ralphie's. She even experienced partial paralysis in half of her body for months at a time. Mr. Ortega refused to take Eliana to a doctor, and admonished her not to exaggerate her physical condition.

39. When Eliana became pregnant in 2007, Defendants continued to deprive her of rest breaks or time off of work. Plaintiff worked through her entire pregnancy, until the day she

gave birth in February of 2008. When Eliana questioned her working conditions, Mr. Ortega told her she would never find another job.

40. Eliana experienced painful complications during her pregnancy, during which Mr. Ortega again declined to take her to the hospital. He said he did not want to incur the expense. Mr. Ortega continued to require Plaintiff to work at Ralphie's every day and to cook for him in the evenings at home.

41. Around April 2011, Mr. Ortega opened a second location for Ralphie's Pizza. Eliana remained working in the original location, while Mr. Ortega worked in the new location. Mr. Ortega maintained control over Eliana by installing video cameras throughout the original pizzeria to monitor Plaintiff's actions. For example, Mr. Ortega would call Plaintiff at the original location from the second location if he saw a customer giving her a tip.

42. Mr. Ortega prohibited Eliana from accepting tips from clients. Such was the level of control Mr. Ortega exerted over Eliana that when he saw a client giving Plaintiff a tip in person or through the video cameras, he told her that she could not keep the money because it belonged to the shop.

43. Some loyal clients gave generous tips. One client gave Eliana $100.00 for Christmas, specifying that the money was only for her. Mr. Ortega saw the money and took half of the tip for himself. Another time, a client tipped Eliana $50.00, specifying that the tip was intended only for Plaintiff. Mr. Ortega took the entire tip from Eliana and told her that each dollar coming into the store must be deposited into the register. He told her that the business belonged to him and all money from clients belonged to the business.

44. Mr. Ortega separated Eliana from other people whenever he could. He required her to work in the back of the shop and prohibited one of her only friends from visiting her at Ralphie's. When health inspectors visited Ralphie's, Mr. Ortega ordered Eliana to remain quiet and not to speak with the inspectors. He sent her to clean the bathrooms when the inspectors were present.

45. Mr. Ortega required Eliana to complete all tasks in the pizza shop, including cooking, maintenance, and cleaning of the premises. Eliana typically worked alone, unless Mr. Ortega joined her during busy periods to increase the store's revenue. Mr. Ortega hired several temporary employees over the years. But the employees never stayed for long.

46. Mr. Ortega intimidated and abused Eliana with threats and physical violence to maintain control over her. As a result, Plaintiff believed she would suffer serious harm if she did not comply with Mr. Ortega's orders. Plaintiff believed she could not leave Mr. Ortega's employment.

**E. DEFENDANT ORTEGA'S DOMESTIC ABUSE AND CONTROL**

47. Mr. Ortega used verbal and physical abuse, constant oversight, and threats of deportation and jail to keep Eliana in a highly controlled situation. He exploited her inability to speak fluent English, her lack of financial resources, and her lack of support system to exert further control.

48. When Plaintiff attempted to call the police to report Mr. Ortega's abuse, Mr. Ortega threatened to report Eliana to immigration authorities as an undocumented immigrant or to tell the police that she had stolen from Ralphie's. As a result, Eliana only reported two

instances of Defendant Ortega's physical abuse, in 2008 and 2015. In fact, his abuse was constant.

49. In June of 2008, Defendant Ortega was arrested for hitting and kicking Eliana in their home. In May of 2015, Defendant Ortega was arrested for striking Eliana in the head with a glass candle holder.

50. Mr. Ortega often physically pushed Eliana out of Ralphie's at the end of a workday. When they fought at home, he forced Eliana to wait outside in the street until his anger subsided.

51. Mr. Ortega secluded Eliana from her friends and family and prevented her from forging relationships.

52. Plaintiff considered initiating legal action against Defendants. But Eliana spoke little English, and did not know how to file a complaint for her wage claims, or how to communicate her situation to the appropriate authorities. Defendant Ortega told Plaintiff she would lose any lawsuit against him because she was an undocumented immigrant, and because she had no rights to time off or a salary.

53. During their marriage, Eliana learned that Defendant Ortega had been married five times, and he had not properly terminated the marriage to his wife directly preceding Plaintiff. When Eliana learned that her marriage was invalid, she told Mr. Ortega that she would report him for bigamy. Mr. Ortega told Eliana that there was no recourse for her in Colorado for his conduct. He told Eliana that because she was not legally his wife, she had no rights.

F. **PLAINTIFF'S ESCAPE**

54. Plaintiff did not escape her employment with Defendants until August 2014.

55. In August 2014, Plaintiff convinced Defendant Ortega to let her take a few days away from the pizza shop. For the first time, Eliana had space and time away from Mr. Ortega to reflect on her desperate situation. The next day a friend helped Eliana find a new job cleaning a church. The new job empowered Plaintiff to cease working for Defendants and begin building a support network.

56. Despite finding an independent source of employment, Eliana remained living under Mr. Ortega's control. Her new job provided only part-time employment, and she did not earn enough to support herself financially. Additionally, plaintiff had lived under Mr. Ortega's control for nearly a decade, and she accordingly had little experience making her own decisions without seeking Mr. Ortega's permission. The environment at home was tense and hostile. Often, Plaintiff and Mr. Ortega did not speak to each other.

57. In May 2015, Mr. Ortega struck Eliana in the head with a glass candle holder. This incident of domestic violence made Eliana realize that she could no longer endure Mr. Ortega's violence, manipulation, control, and abuse.

58. In June 2015, Eliana met a victim's advocate within the police force, who connected her to Colorado Legal Services, a non-profit organization that provides legal services to low-income persons and members of vulnerable populations throughout Colorado. Eliana finally had the resources to terminate her marriage to Mr. Ortega.

59. Although Plaintiff has initiated domestic proceedings to terminate her marriage to Defendant Ortega, Mr. Ortega continues to seek to control Eliana and to undermine her well-being. Mr. Ortega manipulates their son Fabricio and threatens Fabricio's safety as leverage in the divorce negotiations. Additionally, he has deliberately neglected Ralphie's during the

domestic proceedings, and has told Plaintiff that he will continue to neglect the restaurant until the Court determines who holds what interest in the restaurant.

## FIRST CLAIM FOR RELIEF
### VIOLATION OF THE MINIMUM WAGE, OVERTIME, AND RECORDS PROVISIONS OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 206, *et seq.*,
(All Defendants)

60. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59 as set forth above.

61. This claim arises under the FLSA, 29 U.S.C. § 201, et seq., against Defendants.

62. Plaintiff was engaged in commerce while working for Defendants.

63. Defendants failed to pay Plaintiff the required minimum and overtime wages for her work.

64. Defendants failed to maintain records related to the wages, hours, and other conditions of employment in which Plaintiff worked.

65. Defendants' violations of the FLSA were willful, in that Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the FLSA.

66. As a result, Plaintiff suffered damages.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT (TVPRA), FORCED LABOR AND TRAFFICKING INTO SERVITUDE 18 U.S.C. §§ 1589, 1590, 1595
(Defendant Ortega)

67. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 66 as set forth above.

68. This claim arises under the TVPRA against Defendant Ortega.

69. Pursuant to 18 U.S.C. 1589–1590, Defendant Ortega knowingly obtained or provided Plaintiff's labor or services for the purpose of peonage, involuntary servitude, or forced labor, by means of:

    a.    Threats of serious harm to Plaintiff; or

    b.    The abuse or threatened abuse of law or legal process; or

    c.    A scheme, plan, or pattern intended to cause Plaintiff to believe that if she did not perform such labor or services, she would suffer serious harm or physical restraint.

70. As a result, Plaintiff suffered injuries and is entitled to bring a civil action and recover damages pursuant to 18 U.S.C. § 1595.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF COLORADO LABOR CODE Colo. Rev. Stat. § 8-4-103**
(All Defendants)

71. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70 as set forth above.

72. Defendants wrongfully asserted ownership and control over tips and gratuities, which are the sole property of employees of a business, in violation of Colorado Labor Code Colo. Rev. Stat. § 8-4-103.

73. Defendants willfully failed to pay Plaintiff after she left Defendants' employment.

74. Defendants' violations of the Colorado Labor Code were willful, in that Defendants knew or showed reckless disregard as to whether their conduct was prohibited by Colorado Labor Code.

75. As a result, Plaintiff suffered injuries.

## FOURTH CLAIM FOR RELIEF
**VIOLATION OF COLORADO LABOR CODE Colo. Rev. Stat. § 8-2-104; Colo. Rev. Stat. § 8-2-107 (Obtaining Workers by Misrepresentation)**
(Defendant Ortega)

76. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 75 as set forth above.

77. Defendant Ortega caused Plaintiff to be brought into the State of Colorado by means of false and deceptive representations in violation of Colo. Rev. Stat. § 8-2-104.

78. Specifically, Defendant Ortega persuaded Plaintiff to move to Colorado under false pretenses and subjected her to forced labor when she arrived.

79. As a result, Plaintiff suffered injuries.

80. Pursuant to Colo. Rev. Stat. § 8-2-107, Plaintiff is entitled to bring a civil action and recover damages and reasonable attorneys' fees for Defendant Ortega's wrongful conduct.

## FIFTH CLAIM FOR RELIEF
**OUTRAGEOUS CONDUCT (Colorado Common Law)**
(Defendant Ortega)

81. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 80 as set forth above.

82. Defendant Ortega abused and exploited Plaintiff and in doing so engaged in conduct so outrageous that it is atrocious and intolerable.

83. Defendant Ortega engaged in such conduct with the knowledge that it was certain to cause severe emotional distress.

84. As a result, Plaintiff suffered severe emotional injuries that no person could be expected to tolerate, including humiliation and anxiety associated with lack of freedom.

## SIXTH CLAIM FOR RELIEF
### FRAUD (Colorado Common Law)
(Defendant Ortega)

85. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 84 as set forth above.

86. Defendant Ortega intended to induce Plaintiff to travel to the United States in order to exploit Plaintiff and obtain her forced labor and involuntary servitude.

87. Defendant Ortega falsely represented to Plaintiff the conditions under which Plaintiff would live with him in the United States.

88. Defendant Ortega misrepresented his marital status to Plaintiff by failing to disclose that he was already married.

89. Defendant Ortega made such representations knowing them to be false, and he had no intention to provide the living conditions he promised to Plaintiff.

90. Defendant Ortega made the representations with the intent that Plaintiff would rely on them.

91. Plaintiff justifiably relied upon Defendant Ortega's false representations.

92. Plaintiff traveled to the United States in reliance on such false representations.

93. As a result, Plaintiff suffered injuries.

## SEVENTH CLAIM FOR RELIEF
### PROMISSORY ESTOPPEL (Colorado Common Law)

94. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 93 as set forth above.

95. Defendant Ortega made promises to Plaintiff regarding the conditions under which she would live in the United States.

96. As a result of the promise, Plaintiff moved to the United States to live with Defendant Ortega.

97. Defendant Ortega reasonably expected that the promise would induce action by Plaintiff.

98. Such reliance by Plaintiff was reasonable, and Plaintiff relied on the Defendant's promise to her detriment.

99. Defendant Ortega's promises resulted in injury and injustice to Plaintiff.

## DEMAND FOR JURY TRIAL

100. Plaintiff demands a jury for all issues so triable.

## PRAYER FOR RELIEF

101. Plaintiff respectfully requests that this Court enter an order:

(a) assuming jurisdiction of this case;

(b) declaring that Defendants as employers have intentionally violated the FLSA and awarding Plaintiff her unpaid minimum and/or overtime wages and a like amount as liquidated damages;

(c) declaring that Defendant Ortega intentionally violated the TVPRA and awarding Plaintiff damages;

(d) declaring that Defendants intentionally violated Colorado Labor Code and awarding Plaintiff the relevant penalties under Colorado Labor Code;

(e) granting a declaratory judgment against Defendant Ortega on Plaintiff's claims of extreme and outrageous conduct and awarding Plaintiff damages;

(f) granting a declaratory judgment against Defendant Ortega on Plaintiff's claims of fraud and awarding Plaintiff damages;

(g) granting a declaratory judgment against Defendant Ortega on Plaintiff's claims of promissory estoppel and awarding Plaintiff damages;

(h) awarding Plaintiff costs;

(i) awarding Plaintiff prejudgment and post-judgment interest;

(j) awarding other punitive and exemplary damages in an amount to be proven at trial;

(k) awarding compensatory and special damages in an amount to be proven at trial; and

(l) granting such other relief as this Court deems just and proper.

Respectfully submitted this 31st day of January, 2017.

                HOGAN LOVELLS US LLP

                s/ Andrew Lillie
                Andrew C. Lillie
                Nathaniel H. Nesbitt
                Katy L. Bonesio
                1601 Wewatta Street, Suite 900
                Denver, Colorado 80202
                Telephone: (303) 899-7300
                Fax: (303) 899-7333
                andrew.lillie@hoganlovells.com
                nathaniel.nesbitt@hoganlovells.com
                katy.bonesio@hoganlovells.com

                and

                Patricia Medige
                Colorado Legal Services
                1905 Sherman Street, Suite 400
                Denver, Colorado 80203

Telephone: (303) 866-9366  
Fax: (303) 830-7860  
pmedige@colegalserv.org

*Attorneys for Plaintiff*  
*Myriam Eliana Calderon Torrico*

Plaintiff's Address:
1631 W. Canal Cir., Unit 813
Littleton, CO 80120